IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUSAN M. HILTON,

        Plaintiff,

v.                                                                    CIV 15-0116 MV/KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Pursuant to 28 U.S.C. § 636(b), this matter has been referred to me for a recommended disposition. *Doc. 13.* Having carefully reviewed the parties' positions and the material portions of the record, the Court recommends that Plaintiff's Motion to Reverse and Remand for a Rehearing (*Doc. 18*) be granted.

## I.    PROCEDURAL HISTORY[1]

On August 9, 2010, Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II and Part A of Title XVIII of the Social Security Act. *AR* at 168-69. Plaintiff claimed disability in the form of addiction, bipolar disorder and depression. *Id.* at 206. Plaintiff claimed a closed period of disability between August 6, 2009, and June 1, 2011. *Id.* at 51, 166. Plaintiff worked as a court reporter prior to this period and retuned to court reporting after it. *Id.* at 52-53.

The administration denied Plaintiff's application initially and upon reconsideration. *Id.* at 67-69. Plaintiff requested a hearing before an administrative law judge on

---

[1]  Document 13 and all attachments thereto comprise the sealed Administrative Record ("AR"). The Court cites the Record's internal pagination, rather than the CM/ECF document and page numbers.

September 16, 2011. *Id.* at 81-82. After a *de novo* hearing, Administrative Law Judge Ann Farris ("the ALJ") issued an unfavorable decision on November 5, 2013. *Id.* at 18-29. Plaintiff requested that the Appeals Council review the ALJ's decision on November 12, 2013. *Id.* at 14. The Appeals Council denied review on December 22, 2014. *Id.* at 1-6. As such, the ALJ's Decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 459 (10th Cir. 2003). This Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A plaintiff seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). In evaluating a claimant's eligibility for benefits an ALJ is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of April 17, 2009, through the end of the closed period at issue, June 1, 2011. *AR* at 21. At Step Two, the ALJ found evidence that Plaintiff suffers from the following severe impairments: "polysubstance abuse, trichotillomania, bipolar disorder, and Cluster B personality traits with borderline and narcissistic features." *Id.* At Step Three, the ALJ concluded that Plaintiff's impairments meet or medically equal regulatory "Listings" "12.04 under 12.09," or, Depressive Syndrome associated with Substance Addiction. *Id.* at 21; *see generally* 20 C.F.R. § 404, Subpt. P, App. 1. Accordingly, the ALJ found that Plaintiff was disabled during

2

the relevant period when considering all of the impairments, including the substance abuse.

The ALJ then analyzed whether Plaintiff would still be disabled absent substance use. *AR* at 23. As part of her "drug addiction and alcoholism" ("DAA") evaluation, the ALJ determined that if she stopped substance use, Plaintiff's "remaining limitations would cause more than a minimal impact on claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments." *Id.* However, the ALJ found that absent Plaintiff's substance use, these impairments would not meet or medically equal the listings. *Id.* at 24-25.

When a plaintiff does not meet a listed impairment the ALJ must determine her residual functional capacity ("RFC"). *Hendron v. Colvin*, 767 F.3d 951,953 (10th Cir. 2014). "RFC is a multidimensional description of the work-related abilities [a plaintiff] retain[s] in spite of [her] medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1). Based on her review of the record, the ALJ found Plaintiff's non-DAA residual functional capacity ("RFC") as follows: "[i]f the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to simple work-related decisions with few workplace changes and no interaction with the public." *Id.* at 25.

The ALJ then employed this RFC at Steps Four and Five to find that, while Plaintiff could not perform her past relevant work, there are a significant number of jobs in the national economy that she can perform. *Id.* at 27-28. Accordingly, because she concluded that Plaintiff's DAA was a contributing factor material to the determination of

disability, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act for the relevant time period. *Id.* at 28.

## II. <u>LEGAL STANDARD</u>

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

## III. <u>ANALYSIS</u>

### A) Weight Attributed to Dr. Tengco's Opinion

Plaintiff argues that the ALJ erred by failing to assign weight to the opinion of her treating psychiatrist, Dr. Tengco. *Doc. 18* at 19. The ALJ relies heavily on Dr. Tengco's findings at three different places in her analysis: first, in finding that Plaintiff's impairments including DAA meet the listings; second, in determining that Plaintiff would not meet the listings in the absence of DAA; and third, in determining Plaintiff's non-DAA RFC. *AR* at 23, 24 and 26. However, in none of these places does the ALJ state what weight, if any, that she was assigning to Dr. Tengco's opinions. *Id.* The Commissioner argues that the ALJ's conclusions are consistent with Dr. Tengco's findings, such that any failure to weigh the opinion is harmless. *Doc. 22* at 12-13 (citing *Keyes-Zachary*, 695 F.3d at 1162-63). However, this is not entirely accurate.

The Social Security Act provides that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). As noted above, the ALJ concluded that Plaintiff's

4

substance use was material to the determination of disability. *AR* at 28. Plaintiff asserts that this finding "ignored treatment evidence that expressly stated that [her] DAA was <u>not</u> separable from her other mental impairments[.]" *Doc. 18* at 18 (emphasis in original). Indeed, in a "Medical Assessment of Ability to do Work-Related Activities" form for the period of April 2009 to April 2012, Dr. Tengco indicated that she "CANNOT separate the Effects of [Plaintiff's] Mental Impairment(s) From the Effects of Substance Abuse." *Id.* at 443. Dr. Tengco further elaborated on this form that "predominant symptoms of depression and anxiety dominated her disability." *Id.* The ALJ completely omits this finding yet relies on this assessment earlier in her decision. *Id.* at 18-29.

This finding by Dr. Tengco underscores that the "the key factor" in determining materiality is whether the claimant would still be found to be disabled if he or she stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(1) and 416.935(b)(1).[2] Pertinent here, to support a finding that DAA is material in cases involving a co-occurring mental disorder, the ALJ "must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA." SSR 13-2p, 2013 WL 621536 at *9.

Dr. Tengco's finding undercuts the ALJ's materiality determination because it casts doubt on whether Plaintiff's mental impairments would themselves be disabling in the absence of DAA. It is unclear why the ALJ failed to discuss Dr. Tengco's statement

---

[2] The determination is made by evaluating which of the claimant's current limitations would remain if he or she stopped using drugs or alcohol, and then by determining whether these remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2) and 416.935(b)(2). If it is determined that the remaining limitations would not be disabling, then the drug or alcohol addiction is a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(b)(2)(i) and 416.935(b)(2)(i). Conversely, where a claimant's remaining limitations are disabling, he or she will be found disabled independent of the drug or alcohol addiction and the same will not be a contributing factor material to the determination of disability. 20 C.F.R. §§ 404.1535(b)(2)(ii) and 416.935(b)(2)(ii).

that she could not separate the effects of Plaintiff's DAA when she relied upon Dr. Tengco's Assessment in finding that Plaintiff's impairments including DAA met the regulatory Listings. "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). This is especially true in light of the fact that Dr. Tengco was Plaintiff's treating physician throughout the relevant time period. "Under the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in the notice of determination or decision' for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96–2p, 1996 WL 374188, at *5; *Doyal*, 331 F.3d at 762). Failure of an ALJ to weigh a treating physician's opinion is grounds for remand. *Id.*

"[I]n evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

> The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded "controlling weight," on the matter to which it relates. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.* (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the opinion is deficient in either of these respects, it is not to be given controlling weight.

*Id.* "[W]hen all of the factors are satisfied, the adjudicator must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion." SSR 96-2p, 1996 WL 374188 at *2. Furthermore, even if an

opinion from a treating source is not given controlling weight the ALJ is still required to assess the weight to be given to the opinion. *Krauser*, 638 F.3d at 1331. This second inquiry is governed by its own set of factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188 at *4.

While the ALJ appears to rely greatly on Dr. Tengco's findings when consistent with her Listings analysis, she completely omits Dr. Tengco's indication that the effects of Plaintiff's substance use are inseparable from the effects of her co-occurring mental impairments. "Without explanation by the ALJ, the Court cannot conclude that she relied on the form greatly for Listings purposes and wholly ignored it for materiality purposes." *Williams v. Astrue*, CIV 12-0141, Doc. 25 at 11 (D.N.M. October 24, 2012). Explanation by the ALJ is especially important in this case, because if Dr. Tengco's finding was accorded controlling weight, then the ALJ's materiality finding may have been completely different. Dr. Tengco's medical assessment describes Plaintiff's condition over the course of the relevant time period, indicates that she is moderately to markedly impaired in all work-related activities, implies that Plaintiff meets two distinct regulatory listings, and does not distinguish between the effects of her substance use and her mental impairments. *AR* at 442-45. Had the ALJ accorded all of Dr. Tengco's findings

7

on this medical assessment controlling weight she would not have found that Plaintiff's DAA was material to her determination of disability. *See Salazar v. Barnhart*, 468 F.3d 615, 623 (10th Cir. 2006) ("where a medical or psychological examiner cannot project what limitations would remain if the claimant stopped using drugs or alcohol, the disability examiner should find that DAA is *not* a contributing factor material to the disability determination[.]").

Without explanation of the weight she accorded to Dr. Tengco's findings, the Court cannot "simply presume the ALJ applied the correct legal standards in considering [Dr. Tengco's] opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). Therefore, the case must be remanded because the Court "cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion." *Id.* (citation omitted); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (reversing and remanding where the ALJ failed to articulate the weight, if any, given to a treating physician's opinion).

**B) Weight Attributed to Dr. Fredman's Opinion**

Plaintiff also argues that the ALJ erred in failing to assign weight to the opinion of Dr. Fredman. *Doc. 18* at 24. In particular, Plaintiff points out that the ALJ failed to assign any particular weight to Dr. Fredman's finding that Plaintiff "would suffer mild-moderate limitations in interacting with supervisors or superiors." *Id.* The Commissioner again argues that this omission is harmless, relying on *Keyes-Zachary*, 695 F.3d at 1162-63. *Doc. 22* at 13.

"It is the ALJ's duty to give consideration to all the medical opinions in the record" and she "must also discuss the weight [she] assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161 (citing 20 C.F.R. §§ 404.1527, 416.927). *Keyes-Zachary* establishes

that an ALJ's failure to weigh a medical opinion is harmless only when the opinion is consistent with other medical opinions and the ALJ's RFC. *Id.* at 1162. In this case, the ALJ only accorded great weight to state agency physicians who concluded that Plaintiff's impairments do not meet the Listings; she did not assign weight to any other medical opinions. *AR* at 24. Thus, the failure to weigh Dr. Fredman's opinion is only harmless if it is consistent with the ALJ's formulation of Plaintiff's RFC.

While the ALJ explicitly discusses Dr. Fredman's findings when determining Plaintiff's RFC, her actual formulation of the RFC omits any mention of Plaintiff's mild-moderate limitation in interacting with supervisors. *AR* at 25-26 (limiting Plaintiff to "simple work-related decisions with few workplace changes and no interaction with the public."). Thus, the ALJ's failure to assign weight to Dr. Fredman's finding as to her ability to interact with supervisors is not harmless, because inclusion of this limitation could have altered her formulation of Plaintiff's RFC. *See Hays v. Colvin*, 630 F. App'x 749, 753 (10th Cir. 2015) ("Since the report as it relates to Ms. Hays's ability to stand and walk is consistent with neither the ALJ's RFC determination nor the hypothetical posed to the vocational expert in formulating the determination, the failure to consider and weigh it was error."); *compare Smith v. Colvin*, No. 15-1224 at 9 (10th Cir. May 9, 2016) (discussing *Lee v. Colvin*, No. 15-6027, 2015 WL 7003410 (10th Nov. 12, 2015) and finding harmless error when the claimant's RFC incorporated "work requiring only routine supervision or only superficial interaction with supervisors and peers," thereby accounting for her moderate limitation in the ability to respond appropriately to supervisors' criticism). Here, as with Dr. Tengco, the ALJ's failure to explain the weight attributed to Dr. Fredman's opinion leaves the Court to speculate as to how Dr. Fredman's opinion affected the ALJ's decision.

9

**C) Plaintiff's Other Claims of Error**

Plaintiff also argues that the ALJ erred by inadequately explaining why her impairments would no longer meet listing-level severity in the absence of DAA, *Doc. 18* at 13-15, by "fail[ing] to explain which 12.04 'paragraph A' symptoms were aggravated by Ms. Hilton's substance abuse and which 'paragraph A' symptoms could be expected to improve in the absence of substance abuse," *id.* at 15, and by failing to account for or mention the steps set forth in SSR 13-2p in proceeding through the materiality analysis. *Id.* However, the Court will not address these issues at this time "because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV.     <u>CONCLUSION</u>

The Court finds that Plaintiff's motion to remand is well-taken and that this matter should be remanded for reevaluation of the weight to be assigned to the opinions of Plaintiff's treating psychiatrist, Dr. Tengco, and examining psychiatrist, Dr. Fredman, as set forth above.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion to remand *(Doc. 18)* be **granted**.


_____
UNITED STATES CHIEF MAGISTRATE JUDGE

10

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**