IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILLIAM MARCUS JOLLEY,

      Plaintiff,

v.                                                      Case No. 15-CV-1116 GBW

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

## ORDER DENYING REMAND

This matter is before the Court on Plaintiff's Motion to Reverse and Remand to

Agency for Rehearing (*doc. 19*) and accompanying briefing (*docs. 25, 26*).  For the

reasons set forth below, the motion shall be denied.

### I.    PROCEDURAL HISTORY

Plaintiff filed an initial application for disability insurance benefits (DIB) under

Title II of the Social Security Act on March 29, 2012.  Administrative Record ("AR") at

173.  Plaintiff alleged a disability onset date of June 23, 2009, when he became unable to

work due to a torn rotator cuff, mood swings, and post-traumatic stress disorder

(PTSD), including the symptoms of nightmares, flashbacks, and hypervigilance.  AR at

173, 177.  Following the denial of Plaintiff's application on both initial and

reconsideration, an Administrative Law Judge (ALJ) held a hearing on January 12, 2015.

AR at 88-90, 84-87, 49-83.  On May 4, 2015, the ALJ denied Plaintiff's claim.  AR at 30-32.

1

Plaintiff appealed the denial of his application to the Appeals Council, which declined

review on November 4, 2015.  AR at 22-28.  Plaintiff filed in this Court on December 10,

2015, seeking review of the ALJ's decision.  *Doc. 1*.  On May 24, 2016, Plaintiff filed the

instant Motion to Reverse and Remand to Agency for Rehearing.  *Doc. 19*.

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the

Commissioner only to determine whether it (1) is supported by "substantial evidence"

and (2) is grounded in an evaluation of the evidence that comports with the proper legal

standards.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).

"In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our

judgment for that of the agency."  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008)

(citation and internal quotations omitted).

Substantial evidence is "more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Casias,* 933 F.3d at 800. While the ALJ is required to consider all of the evidence of

record, she "is not required to discuss every piece of evidence.  Rather, in addition to

discussing the evidence supporting [her] decision, the ALJ also must discuss the

uncontroverted evidence [she] chooses not to rely upon, as well as significantly

probative evidence [she] rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)

(internal citations omitted).  "The possibility of drawing two inconsistent conclusions

from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

### III.   PARTIES' POSITIONS

Plaintiff asserts that the ALJ committed legal error by failing to evaluate the opinion evidence of Licensed Independent Social Worker (LISW) Christopher H. King. *Doc. 19* at 9-10.  Plaintiff argues that the ALJ was required to consider the opinion evidence of health care providers such as Mr. King in order to determine the severity of Plaintiff's impairments.[1]  *Id.; see also* Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006).  Defendant argues that (1) the ALJ properly considered Mr. King's opinion in reaching her decision that Plaintiff is not disabled; (2) nothing in Mr. King's opinion is inconsistent with the ALJ's determination of Plaintiff's residual functional capacity ("RFC"); (3) even if the ALJ erroneously failed to consider Mr. King's opinion, Plaintiff has not shown that prejudice resulted; and (4) Plaintiff is requesting that the Court reweigh the evidence, which is impermissible.  *Doc. 25* at 8-14. The Court agrees that Mr. King's opinion does not conflict with the RFC, and that the record demonstrates the ALJ considered all of the evidence in reaching her decision that Plaintiff is not disabled.  There is thus no reversible error.

---

[1] Plaintiff also argued that his date last insured was incorrectly determined by the ALJ.  *Doc. 19* at 8-9.  He has since abandoned that argument after determining it was made in error.  *Doc. 26* at 1.  The Court therefore will not address it.

## IV.   ALJ EVALUATION

### A.  Legal Standard

For purposes of Social Security benefits, an individual is disabled when he or she

is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A).  To determine whether a person satisfies these

criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. § 404.1520.   If the

Commissioner finds an individual disabled at any step, the next step is not taken.  *Id*. §

404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he

is not engaged in "substantial gainful activity;" (2) he has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and that either (3) his impairments meet or equal

one of the "Listings" of presumptively disabling impairments; or (4) he is unable to

perform his "past relevant work."  *Id.* § 416.920(a)(4)(i-iv); *Grogan v. Barnhart*, 399 F.3d

1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases.  *Winfrey v. Chater*, 92 F.3d 1017,

1023 (10th Cir. 1996).  First, the ALJ determines the claimant's residual functional

capacity ("RFC") in light of "all of the relevant medical and other evidence."  20 C.F.R. §

4

404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling 82-62 (1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

**B. The ALJ's Decision**

On May 4, 2015, the ALJ issued a decision denying Plaintiff's application for benefits. AR at 33-43. In denying Plaintiff's application, the ALJ applied the required five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of June 23, 2009 through his date last insured of September 30, 2012. AR at 35. At step two, the ALJ determined that through his date last insured, Plaintiff had the following severe impairments: mild degenerative joint disease of the left knee; chronic left rotator cuff tear, status post-

surgical repair with arthritic changes; PTSD; depressive disorder; and alcohol abuse.  *Id.*

At step three, the ALJ concluded that through the date last insured, Plaintiff did not

have an impairment or combination of impairments that met or medically equaled the

severity of a listed impairment.  AR at 36.

      At step four, the ALJ determined that through the date last insured, Plaintiff had

the RFC "to perform less than the full range of medium work as defined in 20 CFR

404.1567(c)."  AR at 37.  Specifically, she found that Plaintiff was limited to: lifting

and/or carrying fifty pounds occasionally and twenty-five pounds frequently; standing,

walking, or sitting for six hours out of an eight-hour workday with regular breaks;

pushing and/or pulling fifty pounds occasionally and twenty-five pounds frequently;

only occasional overhead reaching with the non-dominant left upper extremity; only

occasionally climbing ladders and scaffolds; understanding, remembering, and carrying

out simple instructions; maintaining attention and concentration to perform simple

tasks for two hours at a time without requiring redirection to task; only having

occasional contact with the general public; only having occasional and superficial

interactions with co-workers and supervisors; and work that involves no more than

occasional change in the routine work setting.  AR at 37-38.

      Based on Plaintiff's RFC, the ALJ found that through the date last insured,

Plaintiff was unable to perform any past relevant work.  AR at 41.  However, at step

five, the ALJ found that Plaintiff was capable of performing other jobs that exist in

significant numbers in the national economy, including the occupations of a

weeder/thinner or a kitchen helper, and that Plaintiff was therefore not disabled.  AR at

42-43.

### V.   ANALYSIS

Plaintiff argues that the ALJ committed legal error by failing to properly evaluate

Mr. King's opinion evidence when determining the severity of Plaintiff's impairments.

*Doc. 19* at 10.  An ALJ is required to "consider all medical opinions in the record," and

generally must also discuss the weight assigned to such opinions.  *Quintero v. Colvin*,

567 F. App'x 616, 620 (10th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)-(e), 416.927(c)-(e)).

To determine what weight to give to a medical opinion, the ALJ must consider the

following factors:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is supported
> by relevant evidence; (4) consistency between the opinion and the record
> as a whole; (5) whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to the ALJ's
> attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); *see also*

*Kilpatrick v. Astrue*, 502 F. App'x 801, 806 (10th Cir. 2012).

Only "medically acceptable sources" can "provide evidence to establish the

existence of a medically determinable impairment[,] . . . provide medical opinions[,] . . .

[and] be considered treating sources."  *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir.

2007).  Acceptable medical sources "include licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists." *Id.*  However, other sources from the medical field that do not fall within the definition of "medically acceptable" sources may nonetheless provide evidence for the more limited purpose of demonstrating "the severity of [a claimant's] impairment and how it affects [a claimant's] ability to work." 20 C.F.R. § 404.1513(d).  Medical sources who are not "acceptable medical sources" include "licensed clinical social workers" such as Mr. King.  SSR 06-03p, 2006 WL 2329939, at *2.

Plaintiff's argument relies primarily on a 2006 Social Security Ruling that clarified how the Social Security Administration ("SSA") "consider[s] opinions from sources who are not 'acceptable medical sources[.]'" *See id*. at *1.  The SSA explained in that ruling that opinions from other medical sources such as Mr. King, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *Id*. at *3.  The ruling further explains the extent to which the ALJ is required to explicitly address opinions from non-acceptable medical sources in a disability determination:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" . . . who have seen the claimant in their professional capacity.  Although

8

there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at * 6.

As an initial matter, it is undisputed that Mr. King, as a licensed clinical social worker, does not constitute an "acceptable medical source." *Doc. 19* at 9; *doc. 25* at 8. It is also undisputed that the ALJ failed to discuss Mr. King's statement in her opinion. *Doc. 19* at 10; *doc. 25* at 9. As the ALJ thus failed to explain the weight given to Mr. King's statement, the question is whether Mr. King's statement "may have [had] an effect on the outcome of the case" and if so, whether the ALJ ensured "that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning. SSR 06-03p, 2006 WL 2329939, at *6. For the following reasons, the Court finds that Mr. King's statement would not affect the outcome of the case.

A.  **Mr. King's Opinion is Consistent with the ALJ's Severity Determination at Steps Two and Three of the Analysis**

Mr. King's statement, consisting of three handwritten pages, does not run counter to any of the ALJ's conclusions. *See generally* AR at 240-42; 33-43. The statement is largely dedicated to a faithful recitation of the various diagnoses that other medical sources provided throughout the course of Plaintiff's treatment history—diagnoses that were explicitly discussed and accepted by the ALJ in rendering her decision. *See* AR at

9

240-41 (Mr. King discussing assessments by Dr. Llona Pivar and Dr. David Marro); AR at 39-40 (corresponding discussion in ALJ's decision).  The sole independent opinion included in the document regarding the severity of Plaintiff's symptoms relates to the severity of Plaintiff's PTSD.  *See generally* 240-42.  Mr. King reported that Plaintiff's score on a PTSD symptoms inventory was "69, well above the cut-off score of 50" and that Plaintiff "reports moderate to high level symptoms in all 3 clusters—especially with intrusive thoughts, nightmares, and hypervigilance."  AR at 242.

This opinion is entirely consistent with the ALJ's findings and ultimate decision for several reasons.  First, the ALJ considered the severity of Plaintiff's mental impairments at step two of the sequential evaluation process, finding that Plaintiff's PTSD was a severe impairment, which is consistent with Mr. King's opinion.  *See* AR at 37, 35, 242.

Second, at step three of her analysis, the ALJ again considered the severity of Plaintiff's mental impairments in determining  that Plaintiff did not meet the requirements of the listed impairments in § 12.04 and § 12.06 of the Appendix— Affective Disorders and Anxiety Related Disorders, respectively— because his symptoms did not satisfy the criteria of "paragraph B" in either listing.  AR at 37; *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1., Pt. A-2, §§ 12.04(B), 12.06(B).  This determination also does not conflict with Mr. King's opinion, as explained in more depth below.

For Plaintiff's impairment to meet or medically equal the severity of an Affective Disorder listed in § 12.04, either the requirements in both Paragraphs A and B must be satisfied, or the requirements of Paragraph C must be satisfied. 20 C.F.R. § Pt. 404, Subpt. P, App. 1., Pt. A-2, § 12.04. For Plaintiff's impairment to meet or medically equal the severity of an Anxiety Related Disorder listed in § 12.06, either the requirements in both Paragraphs A and B must be satisfied, or the requirements in both Paragraphs A and C must be satisfied. *Id.* § 12.06. The criteria in Paragraphs B and C are used to rate the severity of mental impairments at steps two and three of the ALJ's five-step analysis. SSR 96-8p, 1996 WL 374184 at *4 (S.S.A. July 2, 1996); *see also Fulton v. Colvin*, 631 F. App'x 498, 505 (10th Cir. 2015).

As a preliminary matter, the ALJ first found that the evidence did not satisfy the criteria of Paragraph C of either listing. AR at 37. Paragraph C of § 12.04 requires, among other things, that Plaintiff has experienced repeated episodes of decompensation, each of extended duration. *Id.* § 12.04(C)(1). Paragraph C of § 12.06 requires a showing that Plaintiff's impairment has "result[ed] in complete inability to function independently outside the area of [his] home." *Id.* § 12.06(C). The ALJ found that Plaintiff had not suffered any episodes of decompensation of extended duration, and Mr. King's opinion does not contradict that finding. *See* AR at 37; *see generally* AR at 240-42. Nor does his opinion contradict the ALJ's implicit finding that Plaintiff is not completely unable to function independently outside of his home. *See* AR at 37; *see*

*generally* AR at 240-42.  Thus, it was not legal error for the ALJ not to discuss Mr. King's opinion in determining that the requirements of Paragraph C were not met for either listing.  *See* SSR 06-03p, 2006 WL 2329939, at *2; *see also Clifton*, 79 F.3d at 1009.

Having determined that the requirements of Paragraph C were not met, the ALJ ultimately rested her severity determination on the finding that the evidence of record also failed to satisfy the criteria set forth in Paragraph B of the listed impairments of Affective or Anxiety Related Disorders.  AR at 37.  Paragraph B of both listings requires a showing that Plaintiff's mental impairments resulted in at least two of the following: (1) marked restriction of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace, or (4) repeated episodes of decompensation, each of extended duration.  20 C.F.R. § Pt. 404, Subpt. P, App. 1., Pt. A-2, §§ 12.04, 12.06.  A marked limitation means more than moderate but less than extreme.  *See id.* at § 12.00(C).

The ALJ determined that Plaintiff did not have a marked limitation in any of the four areas set forth in Paragraph B, although she did find that he had mild restrictions in his activities of daily living, as well as moderate difficulties in the areas of social functioning and maintaining concentration, persistence, or pace.  AR at 36-37.  Additionally, she found that Plaintiff experienced no episodes of decompensation of extended duration.  AR at 37.  In reaching her conclusion regarding activities of daily living, the ALJ considered Plaintiff's abilities to perform household chores, care for

horses, drive a vehicle, shop in stores and online, manage his finances, care for his

personal needs, and participate in leisure activities such as horseback riding and

camping.  AR at 36.

In finding that Plaintiff showed moderate difficulties in social functioning, the

ALJ considered Plaintiff's discomfort with being around other people and preference to

be around horses or other veterans only.  AR at 36-37.  She considered his past job

terminations due to poor interpersonal skills and his need to shop in the early morning

hours to avoid crowds of people as evidence of difficulties in social functioning as well.

AR at 37.  However, she noted that Plaintiff was still able to go to stores in public and to

travel, and thus deemed his difficulties in social functioning to be moderate.  AR at 37.

Finally, in finding that Plaintiff showed moderate difficulties in concentration,

persistence, or pace, the ALJ considered Plaintiff's limitations with regard to completing

detailed or complex tasks.  However, the ALJ offered examples demonstrating

Plaintiff's ability to sustain concentration and attention long enough to perform simple,

routine tasks such as driving a vehicle, using a computer, and providing care for six

horses.  AR at 37.

Mr. King's statement would not have affected any of the above determinations

regarding the severity of Plaintiff's impairments at step three, and it certainly offers no

indication that Plaintiff showed marked limitations in at least two of the four areas set

forth in Paragraph B of either § 12.04 or § 12.06.  *See generally* AR at 240-42.  Again, the

only opinion regarding the severity of Plaintiff's impairments contained in the

statement is that Plaintiff "reports moderate to high level [PTSD] symptoms . . .

especially with intrusive thoughts, nightmares and hypervigilance."  AR at 242.

Intrusive thoughts, nightmares, and hypervigilance are relevant only to Paragraph A of

§ 12.04 and Paragraph A of § 12.06, which enumerate various manifestations of the

listed impairments and required medically documented findings of at least one

manifestation.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1., Pt. A-2, §§ 12.04(A), 12.06(A).[2]

Thus, Mr. King's statement indicating that Plaintiff self-reported various symptoms of

PTSD including hypervigilance, nightmares, and intrusive thoughts would have no

bearing on the ALJ's consideration of the requirements of Paragraph B of either listing,

and the ALJ was therefore not required to discuss it in evaluating the severity of

Plaintiff's PTSD.  *See* SSR 06-03p, 2006 WL 2329939, at *6; *Clifton*, 79 F.3d at 1009.

Additionally, Mr. King's statement that Plaintiff's self-reported symptoms are in

the "moderate to high" range on a PTSD symptoms inventory is consistent with the

ALJ's findings that Plaintiff has moderate—rather than marked—limitations in social

functioning and concentration, persistence, or pace, which were based on evidence of

Plaintiff's inability to go to stores during busy hours, to get along easily with others, or

---

[2] For example, the signs and symptoms listed under Anxiety Related Disorders include, among other things, "vigilance and scanning" and "recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress."  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A-2, § 12.06(A)(1)(d), (A)(5).  Signs and symptoms indicating affective disorders include but are not limited to: sleep disturbance, thoughts of suicide, easy distractibility, and hallucinations, delusions, or paranoid thinking. *See id.* § 12.04(A)(1)(c), (h), (A)(2)(f), (h).

to concentrate on detailed or complex tasks. *See* AR at 36-37. It is ambiguous whether the "moderate to high" language in Mr. King's opinion refers to the number of symptoms of Plaintiff's PTSD or to the severity of those symptoms. Regardless, there is no indication that self-reported PTSD symptoms that are between moderate and high severity would satisfy at least two of the four requirements of Paragraph B, for the reasons already discussed. The ALJ's severity determination was therefore entirely consistent with Mr. King's opinion, and there is no indication that she rejected it or failed to consider it.

As Mr. King's statement offers no opinion that would have any outcome-determinative effect on the ALJ's analysis of Paragraphs B or C of the Affective Disorder and Anxiety-Related Disorder listings, the ALJ was not required to discuss it in evaluating the severity of Plaintiff's PTSD at steps two or three of the sequential evaluation process. *See* SSR 06-03p, 2006 WL 2329939, at *6.

**B.  Mr. King's Opinion is Consistent with the ALJ's Determination of Plaintiff's RFC**

The ALJ included in her determination of Plaintiff's RFC that he is limited to understanding, remembering, and carrying out simple instructions, that he can only perform simple tasks for two hours at a time, and that he can only have occasional contact with the general public and occasional and superficial interactions with co-workers and supervisors. AR at 37-38. These mental limitations in Plaintiff's RFC are directly derived from the ALJ's determinations at step three that Plaintiff has moderate

15

limitations in social functioning and concentration, persistence, or pace, as discussed

above, and Mr. King's opinion does not indicate that any further limitations should

apply.  *See* AR at 36-38; 240-42.  As such, the reasoning behind the ALJ's determination

of Plaintiff's RFC remains easy to follow without explicit discussion of the weight given

to Mr. King's opinion.  The Court therefore can find no error in the ALJ's RFC

determination on the basis that the ALJ did not discuss Mr. King's opinion.  *See* SSR 06-

03p, 2006 WL 2329939, at *6.

### C.  Mr. King's Opinion is Consistent with the ALJ's Finding of Non-Disability

During the disability hearing, the ALJ repeatedly rejected occupations suggested

by the Vocational Expert (VE) where they were inconsistent with Plaintiff's RFC,

specifically with regard to his inability to have more than occasional contact with the

general public or to engage in more than occasional and superficial interactions with his

co-workers and supervisors.  *See* AR at 79-81.  The following exchange between the ALJ

and the VE serves as an illustrative example:

> VE:    . . . Okay.  So we have a dining room attendant.
> ALJ:  Okay.  How much public contact is going to be involved with that
> though?
> VE:   With a dining room attendant, there's going to be a fair amount.
> It'll be superficial, you'll be around folks, but you're not necessarily
> interacting with them.
> ALJ:  I'd, I'd rather leave that out because I'm talking about contact in
> general.

16

AR at 80.  Additionally, the ALJ agreed to consider the kitchen helper occupation as a possibility only after the VE confirmed that that job would require only "very seldom" contact with the general public.  AR at 80.

By incorporating all of Plaintiff's limitations identified at step three, including his PTSD-related moderate limitations in social functioning, the ALJ rested her finding of non-disability at step five on a faithful application of Plaintiff's RFC.  Because Mr. King's opinion regarding the severity of Plaintiff's PTSD was entirely consistent with the mental limitations included in that RFC, as discussed above, and the record "demonstrate[s] that the ALJ considered all of the evidence" in making her ruling, the ALJ therefore did not err by not explicitly discussing the King opinion.  *See* SSR 06-03p, 2006 WL 2329939, at *6; *Clifton*, 79 F.3d at 1009-10.

Moreover, essential to the ALJ's ultimate finding of non-disability was her overall evaluation of the medical evidence of record as follows:

> Overall, the medical evidence of record fails to support the claimant's allegations of disabling conditions and symptoms.  I find that the medical evidence primarily summarize[s] the claimant's subjective complaints, diagnosis[,] and treatment, but do[es] not present objective clinical or laboratory diagnostic findings.  I also note that there are no opinions from any treating provider that the claimant is unable to work . . . .

AR at 40.  Again, consideration of Mr. King's statement would not alter this determination, as the statement primarily consists of a summary of the diagnoses given by other medical providers, does not contain any opinion that Plaintiff is unable to work, and to the extent it offers an opinion regarding the severity of Plaintiff's PTSD,

17

such opinion is based solely on Plaintiff's self-reported symptoms—i.e., his subjective complaints.  *See generally* AR 240-42.

The SSA has clearly stated that an ALJ is not required to explain the weight given to opinions from "non-acceptable medical sources" such as Mr. King, as long as she "otherwise ensure[s] that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow [her] reasoning, when such opinions may have an effect on the outcome of the case."  SSR 06-03p, 2006 WL 2329939, at *6.  Here, the ALJ's reasoning regarding her determination of the severity of Plaintiff's impairments is easy to follow and, more importantly, Mr. King's statement contains no opinions that would have an outcome-determinative effect on the ALJ's ultimate decision.

There is no indication that the ALJ did not consider Mr. King's statement, because her summary of the medical evidence is entirely consistent with the content of that statement.  Significantly, the Court should not reweigh the evidence or substitute its discretion for that of the ALJ.  *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir. 1986). Plaintiff has failed to present any evidence demonstrating: (1) that the ALJ did not consider Mr. King's statement; (2) that the ALJ's reasoning was difficult to follow absent an explanation of the weight given to Mr. King's statement; or (3) that Mr. King's statement is inconsistent with any of the ALJ's determinations, including her finding of non-disability at step five.  The Court therefore cannot find any valid basis for reversal.

18

## VI.   CONCLUSION

Based on the foregoing, Plaintiff has failed to establish that the ALJ committed reversible error.  Accordingly, Plaintiff's Motion to Reverse and Remand to Agency for Rehearing (*doc. 19*) is DENIED, and this action is hereby DISMISSED with prejudice.

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**